Hyman Friednash v. Commissioner. Geneva Friednash v. Commissioner.
Friednash v. Commissioner
Docket Nos. 24333, 24334.
United States Tax Court
1952 Tax Ct. Memo LEXIS 335; 11 T.C.M. (CCH) 96; T.C.M. (RIA) 52026; January 31, 1952
Preston D. Orem, Esq., 756 S. Broadway, Rm. 811, Los Angeles 14, California, for the petitioners. John H. Pigg, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings involve deficiencies in income tax of Hyman Friednash and his wife Geneva for 1944 in the respective amounts of $25,554.41 and $18,845.41. The issues involved are the amount of the deduction allowable for compensation to Henry Friednash, brother of Hyman Friednash, for managing a restaurant and bar belonging *336 to petitioners, and whether in any even the deduction of a portion of such compensation is prohibited by section 24(c), Internal Revenue Code. The proceedings were consolidated for hearing. Findings of Fact Petitioners are residents of San Diego, California. Their returns for 1944 were filed with the collector for the sixth district of California. During and for some time prior to 1944 Hyman Friednash, hereinafter referred to as petitioner, was engaged in the liquor business. He operated several retail liquor stores located in San Diego, National City, and Coronado, California. Due to the fact that petitioner had previously been convicted of violating the national prohibition laws all of the properties used in connection with his liquor business were carried in his wife's name. Petitioner's brother, Henry Friednash, worked for him from time to time. He was an experienced bartender and during 1943 he was engaged as manager of one of petitioner's liquor stores located on Market Street, San Diego. While so employed Henry learned that a restaurant and bar known as Tahiti Cafe, located across the street from the liquor store, was for sale. He urged petitioners *337 to buy the property and let him operate it on a partnership basis. Petitioners were reluctant to do so, but finally they did agree to buy the property and to let Henry operate it as an employee. The property was purchased on November 27, 1943, in the name of Geneva Friednash at a total cost of $27,500, of which $5,000 was allocated to the retail liquor license and the balance to good will, lease, and equipment. The liquor stock was priced at current wholesale prices. As of January 1, 1944, petitioner and Henry entered into the following written agreement: "I, Geneva Friednash and Henry Friednash do hereby enter into an agreement that said Henry Friednash will be the Acting Manager of the Tahiti Cafe located at 819 National Avenue, National City, and for his services will participate in the net profits of the business to the extent of fifty percent over and above a monthly salary of Five Hundred Dollars per month, said net profits of the business to be figured after a full years business and a division of profits made to December 31, 1944 and subsequent years. "This agreement can become null and void within thirty days after written notice by either party concerned." The above *338 agreement was dictated by petitioner and was typed and signed in his office. Henry was in complete charge of Tahiti Cafe during the entire year 1944. He hired and fired the employees, bought the liquor and other supplies, collected an deposited the daily receipts, and performed other duties required in the management of the business. He worked seven days a week, usually from about 10:00 a.m. until after midnight. There were about seven bartenders and three waitresses regularly employed. Most of the customers were service people or civilian war workers stationed nearby. All but a small percentage of the restaurant's business was from the sale of liquor, beer and wine. Very little food was served although it was available whenever customers requested it. Neither of the petitioners took any part in the management of the business. However, they did retain control over the finances. All of the food and liquor bills and other major expenses were paid through the main office of Bay City Liquor House, located at 1301 Market Street, San Diego, the name under which petitioner conducted all of his liquor business. Henry deposited all receipts of the business in the Bank of America located *339 nearby in a special account maintained for that purpose. He had no authority to draw checks on the account. From time to time petitioner would have these funds transferred to his own account or that of Bay City Liquor House at the Security Trust and Savings Bank in San Diego. Henry's salary of $500 per month was paid to him by the petitioner bi-monthly. Petitioner kept one set of books at his main Bay City Liquor House office in which all of the records for his liquor business as well as the Tahiti Cafe were kept. The restaurant account was kept separately under the designation "Operation #7." Tahiti Cafe was operated until September 1945 when it was sold by petitioner for $60,000. It was sold without Henry's consent and against his wishes. Later during 1945 Henry repurchased a one-third interest in the business from the new owner for $20,000. The gross sales of Tahiti Cafe in 1944 amounted to $213,710.29, and its net profits after deductions of Henry's salary in the amount of $6,195 were $75,345.24. Petitioner had an audit made of his books in April 1945 which disclosed that Henry's 50 per cent share of the profits for 1944 amounted to $37,672.62. That amount was credited to him *340 in petitioner's books about April 15, 1945, "as of December 31, 1944." Henry's regular salary payments were not entered in this account. No withdrawals were made from the account in 1944, but during 1945, 1946, and 1947, checks were drawn by petitioner or other authorized persons on Bay City Liquor House bank accounts to or for Henry's use and charged to Henry's account in petitioner's books as follows: Date of Check
Name of Payee
Amount
3/15/45
Henry Friednash
$ 2,500.00
6/15/45
Collector of Internal Revenue
2,500.00
9/15/45
Collector of Internal Revenue
620.13
10/25/45
Henry Friednash
20,000.00
Subtotal
$25,620.13
3/15/46
Collector of Internal Revenue
6,756.36
7/30/46
Cross, Bates & Co. (Accountants)
22.50
8/ 7/46
State Treasurer (State income tax)
833.29
2/ 9/47
Henry Friednash
11,000.00
Total
$44,232.28
At all times here material petitioner had sufficient cash on hand in the Bay City Liquor House accounts to pay the amount due on Henry's account. On one or more occasions he asked Henry to withdraw his money, but Henry replied that he had no need for it and did not want it at that time. The above-listed checks were issued to *341 Henry for his use as he requested funds for his particular needs as indicated. The $20,000 withdrawn in 1945 was to purchase the one-third interest in Tahiti Cafe mentioned above. Petitioners filed their income tax returns on an accrual basis. In computing their community income from Tahiti Cafe in 1944 and 1945 they deducted the salary paid to Henry in those years in the respective amounts of $6,195 and $4,557.70 and also his 50 per cent of the net profits of Tahiti Cafe, amounting to $37,672.62 in 1944 and $22,716.11 in 1945. Henry, who made his returns on a cash basis, reported in 1944 only the income actually paid to him by petitioner in that year, amounting to $6,195. He did not report any of the Tahiti Cafe profits credited to him in petitioner's books as set out above but not paid to him in 1944. The respondent determined in his notice of deficiency in each proceeding that $24,000 was reasonable compensation for Henry in 1944 and disallowed the balance of the $43,867.62. Also in the notice of deficiency to Hyman Friednash he determined that only the compensation paid to Henry during 1944 or within two and one-half months after the close of the taxable year was allowable as *342 a deduction under section 24(c), I.R.C. The notice of deficiency to petitioner, Docket No. 24333, stated that: "In computing net profits from the Tahiti Cafe for the calendar year 1944 you deducted $43,867.62 as compensation payable to Henry Friednash for managing this business. Only $9,506.25 of this amount was paid during the year 1944 or within two and one-half months following the close of that year. "It is held that $24,000.00 represents a reasonable compensation for services rendered and that the excess of $19,867.62 does not constitute an allowable deduction under section 23(a) of the Internal Revenue Code. It is further held that the provisions of section 24(c) of the Internal Revenue Code are applicable in your case and that the deduction otherwise allowable under section 23(a) is limited to the amount actually paid, or $9,506.25. "Upon the basis of these determinations your community share of this business income is increased by $17,180.69 computed as follows: Community
Total
One-half
"Excessive compensation, section 23(a)
$19,867.62
$ 9,933.81
"Limitation under section 24(c)
($24,000.00 - $9,506.25)
$14,493.75
7,246.88
"Total adjustment
$17,180.69"
*343 Opinion LEMIRE, Judge: The respondent's contentions are, first, that $24,000 is a reasonable allowance for compensation for the personal services rendered by Henry in 1944, and that the balance of the compensation claimed should be disallowed, and, second, that, as to petitioner Hyman Friednash, the allowable deduction is limited under section 24(c) to $9,506.25, the amount of compensation actually paid to Henry during or within two and one-half months after the close of the taxable year. The greater portion of Henry's compensation consisted not of salary but of his portion of the net profits of Tahiti Cafe, under his agreement with the petitioner. According to the evidence this was a bona fide agreement entered into in good faith and for business reasons. Petitioner was to put up the money to buy the restaurant, Henry was to operate it, and they were to divide the net profits, if any, evenly. It was known that the major portion of the income would be realized from the sale of drinks. Henry was an experienced bartender. He was in charge of the business from the beginning and was solely responsible for the results of the operation. The fact that petitioner was in a position to *344 furnish and did furnish all the liquor that was needed for the restaurant undoubtedly contributed to its success, as respondent argues. That may have been one of petitioner's reasons for being willing to make the venture. No contention is made by respondent that petitioner furnished the liquor at less than reasonable prices or that this phase of the business contributed in any way to an evasion or distortion of income. The careful management of the business by Henry undoubtedly contributed equally to its success. It might be pointed out that arm's length business transactions between brothers do not come within the usual type of interfamily transactions which are said to require special scrutiny. Helvering v. Clifford, 309 U.S. 331. Petitioner and Henry were not members of the same economic family group, nor is there any suggestion in the evidence of any attempt at shifting income or tax burdens between them.
We think that respondent's disallowance of a portion of the profits belonging to and credited to Henry in petitioner's books in 1944 as unreasonable and excessive was in error. A more difficult question is whether, as to petitioner Hyman Friednash, the allowable *345 deduction is limited under section 24(c) to the amount actually paid to Henry during or within two and one-half months after the close of the taxable year 1944. As will be noted above, only $9,506.25 of the $43,867.62 claimed as a deduction was so paid. Section 24(c) provides in effect that as between members of a family, including brothers, no expense deduction shall be allowed under section 23(a) unless paid during or within two and one-half months after the close of the taxable year, and unless the amount in dispute is properly to be included in the income of the payee for the taxable year in which the deduction is claimed by the payor. Petitioners made their returns on an accrual basis and deducted the full amount of compensation due Henry as an accrual of 1944. Henry made his return on the cash basis and reported only the amount actually withdrawn by or paid to him in that year. Petitioner contends, however, that Henry constructively received his full share of the profits in 1944 and should have reported them in his return for that year. If there was constructive receipt by Henry of his share of the profits in 1944 so that it was includible in his gross income for that year, *346 the condition described in section 24(c)(2) does not exist and the section is not applicable. See Michael Flynn Mfg. Co., 3 T.C. 932; Musselman Hub-Brake Co. v. Commissioner, 139 Fed. (2d) 65. However, the evidence before us does not support petitioner's contention that Henry constructively received his unpaid share of the profits in 1944. The audit of petitioner's books for that year was not completed or the profits determined until about April 15, 1945. Henry's share of the profits, amounting to $37,672.62, was not credited to him in petitioner's books until after the audit was made, although the credit was entered "as of December 31, 1944." There is no showing what portion, if any, of the amount credited to Henry in the books in April 1945 was actually available to him and subject to his unfettered use in 1944 before the amount of the profits for that year had been determined. See Van W. Peabody, 5 T.C. 426. It is significant that Henry did not report in his 1944 return any income from Tahiti Cafe except the $6,195 that was actually paid to him by petitioner in that year. We think that section 24(c) is applicable and limits the deduction available *347 to the petitioner under section 23(a), as determined by the respondent. On the basis of the agreement under which petitioner and Henry operated it might be argued that they were joint adventurers in the operation of Tahiti Cafe, so that the net profits which petitioner sought to deduct as a business expense were never in fact his income. However, since the parties have not pleaded or argued this question in their briefs, and since it is not essential to our disposition of the issue confronting us, we will not now pass upon it. Decisions will be entered under Rule 50.